## COMMONWEALTH *vs.* WILLIAM HARVEY.

No. 05-P-262.

Middlesex. January 9, 2006. - May 18, 2006.

Present: RAPOZA, GREEN, & KATZMANN, JJ.

*Practice, Criminal,* Mittimus, Sentencing. *Imprisonment,* Credit for time served. *Due Process of Law,* Pretrial detainees.

Because a criminal defendant had already received credit for the time he spent in jail awaiting trial on charges for which he was ultimately convicted and sentenced to time in State prison, a judge considering the defendant's motion to correct the mittimus did not err in denying his request to receive credit for the same period of time on a second set of charges that were unrelated and for which he received a consecutive (nonconcurrent) house of correction sentence [299-302]; likewise, the defendant was not entitled to reduce the sentence he was serving by certain "dead time" during which he was held in pretrial detention but then acquitted on an earlier, unrelated charge [302].

INDICTMENTS found and returned in the Superior Court Department on June 17, 1999.

A motion to correct a mittimus was considered by *Peter M. Lauriat,* J.

*Cynthia A. Vincent Thomas* for the defendant.

*Bethany Stevens,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. The defendant appeals from the denial of his motion to correct a mittimus. He poses the following question: where a defendant is sentenced to two consecutive sentences arising from separate criminal episodes, and where he was unable to make bail on each case, is he entitled to be credited on both sentences with the overlapping time spent in pretrial detention? We conclude that in the circumstances here he was properly denied such credit, as well as "dead time" credit arising from pretrial detention on an unrelated charge.

1. *Relevant procedural history.* On June 30, 1999, the defendant was arraigned in Superior Court on the indictments that gave rise to the sentencing issue in this appeal (the initial indictments). In relevant part those indictments charged the defendant with eleven counts of violating an active restraining order, in contravention of G. L. c. 209A, § 7, and two counts of assault and battery of his wife.[1] At arraignment, a cash bail in the amount of $200,000 was set. The defendant could not post the bail and was held in jail. On that date, the defendant had already been in jail since February 1, 1999, as the result of having been held on other, unrelated crimes.

On April 8, 1999, the defendant appeared in District Court on an unrelated charge of statutory rape (involving his fifteen year old stepdaughter),[2] and was subsequently indicted on this charge. At his arraignment on June 8, 1999, a cash bail in the amount of $100,000 was set. The defendant could not post bail and was held in pretrial detention until December 13, 2000, when a Superior Court jury found him guilty on this statutory rape charge, and he was sentenced on January 12, 2001, to State prison for a term of no less than four and no more than six years. Although the defendant had only been in custody on this charge since April 8, 1999, the judge credited him with 712 days, which covered the period from February 1, 1999, to January 12, 2001.

On May 21, 2002, a second Superior Court jury convicted the defendant on the initial indictments, returning guilty verdicts on eleven counts of violating a restraining order and two counts of assault and battery. On that date the judge who presided at the second trial imposed two consecutive house of correction sentences, to be served from and after the defendant's prison sentence on the statutory rape conviction, followed by four concurrent five-year probation terms. The judge placed the remaining charges on file. The defendant was not given any credit for time spent in custody before trial.

On November 24, 2004, the defendant moved to correct the

---

[1] The original indictments also contained other counts, which were nolle prossed before trial.

[2] Initially the defendant was held without bail on this charge pursuant to G. L. c. 276, § 58A. On May 20, 1999, a cash bail was set in the amount of $100,000, which the defendant did not post.

mittimus. As we detail below, he sought credit for 627 days that he had spent in pretrial confinement, involving two separate time periods — one encompassing 532 days, and the other ninety-five days. The motion judge, who had presided over neither of the two trials, "[u]pon review of [the defendant's] motion and the Commonwealth's opposition," ruled that "[t]he defendant is not entitled to credit against each of two consecutive sentences for time awaiting trial." The defendant appealed.

2. *Period of 532 days.* The defendant argues that he is entitled to 532 days of credit for the time period he was held on bail awaiting trial on the assault and battery and restraining order charges, namely from the date of his arraignment, June 30, 1999, until December 13, 2000, the date he was found guilty on the unrelated statutory rape charge. He argues that this time should be credited to his consecutive house of correction sentences notwithstanding the fact that he had received 712 days of credit, which encompassed the same time period, on the unrelated State prison sentence imposed on the statutory rape case. The Commonwealth argues that because the days for which the defendant seeks credit were already included in the credit he received on the statutory rape indictment, he is not entitled to it twice.

At the heart of the case is G. L. c. 279, § 33A, as appearing in St. 1961, c. 75, which provides:

> "The court on imposing a sentence of commitment to a correctional institution of the commonwealth, a house of correction, or a jail, shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial."

The defendant claims that based on the plain wording of the statute, he is entitled to credit for time spent in confinement in lieu of bail from June 30, 1999, to December 13, 2000. This argument would result in the defendant's receiving a total of 1,244 days of credit, although only having been held in pretrial confinement for 712 days.

To be sure, defendants have a right to have their sentences

reduced by the amount of time they spend in custody awaiting trial. See G. L. c. 279, § 33A (addressed to the sentencing judge).[3] "[T]he basic purpose of the statute was to provide for relief to those defendants who have served any jail time prior to their sentences." *Commonwealth* v. *Grant*, 366 Mass. 272, 274 (1974). While many cases have interpreted this statute and its underlying principle, they have not arisen in the precise circumstances presented here, implicating separate criminal episodes and consecutive sentences. Compare, e.g., *id.* at 272-273 (Federal and State prosecutions, single criminal episode); *Commonwealth* v. *Carter*, 10 Mass. App. Ct. 618, 618-621 (1980) (consecutive sentences, single criminal episode); *Commonwealth* v. *Blaikie*, 21 Mass. App. Ct. 956 (1986) (concurrent sentences, separate criminal episodes); *Commonwealth* v. *Murphy*, 63 Mass. App. Ct. 753 (2005) (concurrent sentences, separate criminal episodes). However, emerging from the cases interpreting G. L. c. 279, § 33A, are several guiding principles. Fairness is the basic touchstone, and "is the appropriate measure in determining whether and to what extent . . . credit for the time" spent in custody should be given. *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427 (1978). The statute is not to be examined in "an overly technical manner" but is rather to be read "against the backdrop of fair treatment of the prisoner." *Commonwealth* v. *Grant*, 366 Mass. at 275. "[A] defendant is generally entitled to all of the time he spent in custody awaiting trial, but not more than that." *Commonwealth* v. *Murphy*, 63 Mass. App. Ct. at 757, citing *Commonwealth* v. *Carter*, 10 Mass. App. Ct. at 620.

Here, there is no question that the defendant was held on a $200,000 cash bail on the initial indictments. It is similarly without question that during this time period the defendant was held on an additional $100,000 cash bail set on the unrelated

---

[3]See also G. L. c. 127, § 129B, as appearing in St. 1961, c. 74 (addressed to the Commissioner of Correction), which provides: "The sentence of any prisoner in any correctional institution of the commonwealth or in any house of correction or jail, who was held in custody awaiting trial shall be reduced by the number of days spent by him in confinement prior to such sentence and while awaiting trial, unless the court in imposing such sentence had already deducted therefrom the time during which such prisoner had been confined while awaiting trial."

statutory rape indictment. Had the defendant not received credit for any of the of the time he was held from February 1, 1999, until December 13, 2000 (when he was convicted of the unrelated statutory rape), he would be entitled to receive credit against his house of correction sentence. G. L. c. 279, § 33A. However, he received the benefit of reducing his more serious State prison sentence by that entire amount of time, despite having only been held on the unrelated statutory rape indictment since April 8, 1999. Under these circumstances, a sensible reading of the statute does not support the contention that he is entitled to subtract this time from *both* his State prison sentence and his consecutive house of correction sentence. See *Commonwealth* v. *Carter*, 10 Mass. App. Ct. at 620-621. See also *Commonwealth* v. *Murphy*, 63 Mass. App. Ct. at 757 ("[o]nce it is understood that the defendant was being held for trial on cases from both counties, it is incumbent on the sentencing judge to ensure that the defendant receives credit for that time against the higher sentence").

The logic of what we have said elsewhere is applicable here: "Had the defendant been able to make bail, he would have been obliged to serve the full consecutive sentences. Were the defendant to get double credit for presentencing confinement, he would serve [532] fewer days in prison than if he had made bail. A statute designed to neutralize the consequence of inability to make bail should not be construed to lead to such a bizarre result." *Commonwealth* v. *Carter*, 10 Mass. App. Ct. at 621. Fairness suggests that the jail credit the defendant seeks might be awarded if the sentences imposed on the two sets of charges were concurrent. They were not, and therefore, it would be contrary here to the ultimate goal of fairness to allow the defendant to earn two days of credit for every day in jail. Because the defendant had already received credit for the time he spent in jail awaiting trial, the judge did not err in denying the defendant's request to receive credit for the same period of time on the second set of charges and thus to effectively reduce his sentence.[4] Cf. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 395 (1977) (credit for

[4]The defendant relies on *Libby* v. *Commissioner of Correction*, 353 Mass.

time served did not result in the plaintiff receiving a windfall or double credit).

3. *Period of ninety-five days.* The defendant also claims that he is entitled to reduce the sentence he is presently serving by ninety-five days of "dead time" due to his September 3, 1998, acquittal on an unrelated assault and battery charge arising from an alleged May, 1998, incident. The defendant had been incarcerated for ninety-five days on that charge when a jury found him not guilty. While under some circumstances a defendant is entitled to credit for what would otherwise be "dead time," *Commonwealth* v. *Foley*, 17 Mass. App. Ct. 238, 243-244 (1983), such credit can only be applied to a sentence on a charge that was pending at the time of his pretrial detention. To award the time to any of the crimes committed after his acquittal and release would be tantamount to permitting the defendant to "bank time" against future offenses. *Commonwealth* v. *Milton*, 427 Mass. 18, 24-25 (1998). Such a result would run afoul of the rule preventing criminals from having "a line of credit for future crimes," *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. at 395, quoting from *Miller* v. *Cox*, 443 F.2d 1019, 1021 (4th Cir. 1971), and would "grant prisoners a license to commit future criminal acts with immunity." *Commonwealth* v. *Milton*, 427 Mass. at 25. In sum, the judge did not err in rejecting the defendant's claim that his sentence on the initial indictments should be reduced by an additional ninety-five days.

> *Order denying motion to correct mittimus affirmed.*

---

472, 474, 475 (1968), to support his claim that he is entitled to double credit. However, he cannot overcome that the concurrent sentences in *Libby* are distinguishable from the consecutive sentences at issue here. Moreover, even in the context of concurrent sentences, consistent with the principle of fair treatment of the prisoner, applying jail credits to each concurrent sentence so that the sentences in fact retain their concurrent status "does not apply . . . [when] the sentences against which the prisoner seeks to apply jail credit . . . are longer than the sentences with which they are to be served concurrently . . . ." *Commonwealth* v. *Blaikie*, 21 Mass. App. Ct. at 957.