### COMMONWEALTH vs. JOHN E. MILTON.

Middlesex. December 8, 1997. - March 3, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Probation, Sentence. *Due Process of Law,* Probation revocation. *Constitutional Law,* Separation of powers.

A probation surrender proceeding commenced within the period of the defendant's probation was proper, and there was no merit to the defendant's claim that his due process rights were violated by the probation department's discontinuance of a prior revocation proceeding when the defendant was acquitted of the charge on which the surrender notice was based. [21-22]

The appearance and participation of an assistant district attorney in probation revocation proceedings was not improper and did not violate separation of powers principles embodied in art. 30 of the Massachusetts Declaration of Rights. [22-23]

A criminal defendant who, while on probation, served 410 days' "dead time" before being acquitted of a robbery charge, was not entitled to credit for those days against the sentence imposed following surrender of his probation for a subsequent unrelated offense. [23-25]

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on August 19, 1993.

A motion to dismiss a probation surrender proceeding or, in the alternative, to receive credit for time served was heard by *Paul P. Heffernan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*William G. Small* (*Anne L. Berger* with him) for the defendant.

*Geraldine C. Griffin,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant appeals from the denial, by a District Court judge, of his motion to dismiss a probation surrender proceeding. In addition, the defendant appeals from the judge's denial of his request to receive credit against his sentence for time he spent incarcerated in lieu of bail awaiting

trial for a prior, unrelated crime, of which he was acquitted. See G. L. c. 279, § 33A; G. L. c. 127, § 129B. We granted the defendant's application for direct appellate review. We affirm the order denying the defendant's motion to dismiss the probation surrender proceeding. We conclude that the probation department's conduct regarding his case was proper and did not prejudice the defendant. We further conclude that the defendant is not entitled to receive credit for time he served awaiting trial on a prior, wholly unrelated charge, because the statutes, G. L. c. 279, § 33A, and G. L. c. 127, § 129B, do not permit the defendant, in effect, to "bank time" for credit against future offenses.[1]

The relevant facts are as follows. On November 29, 1993, the defendant was placed on two years' probation after being found guilty of assault and battery on a police officer, assault by means of a dangerous weapon, being a disorderly person, and possession of an open container of alcohol.[2] A District Court judge sentenced the defendant to two concurrent terms of one year in a house of correction on the assault and battery convictions, and one concurrent six-month term on the disorderly person conviction. The open container conviction was placed on file. All the prison sentences were suspended, with conditions of probation, until November 28, 1995.

On January 17, 1994, the defendant was arrested and charged with armed robbery. On the following day, the probation department served him with a notice of surrender and hearing for alleged violation of probation. On February 3, 1994, a Middlesex County grand jury returned an indictment charging the defendant with armed robbery. Bail was set at $500 cash or a $5,000 surety. The defendant did not post bail. At the defendant's request, the date of the probation surrender hearing was continued until disposition of the armed robbery charge.

On March 1, 1995, approximately fifteen months after the defendant had been arrested, the Commonwealth nolle prossed so much of the indictment as alleged armed robbery. On the following day, a jury found the defendant not guilty of unarmed robbery, and he was discharged. The probation department withdrew the notice of surrender on March 14, 1995.

[1]Because we conclude that a defendant may not "bank time" for credit against future offenses, we do not discuss the defendant's claim that a single justice of the Appeals Court erred by denying his motion for a stay of execution of sentence.

[2]Pursuant to G. L. c. 265, §§ 13D & 15B, and G. L. c. 272, § 53.

Six months later, the defendant was arrested for being a disorderly person. The probation department served him with a notice of surrender, again relating to the original November, 1993, suspended sentence. A default was entered on the docket on October 27, 1995. The default was removed on November 25, 1996, when the defendant appeared in court on these matters.[3]

The defendant filed a motion to dismiss the second probation surrender proceeding. The motion requested in the alternative that, should the defendant be found in violation, he be given credit on any sentence imposed for the 410 days he spent in pretrial incarceration. After a hearing, the District Court judge denied the defendant's motion to dismiss the probation surrender proceeding. The judge then heard arguments on the alleged probation violation, and found the defendant to be in violation of his probation. He then imposed the previously suspended sentence of two concurrent one-year terms and one concurrent six-month term pursuant to the November 29, 1993, convictions. The judge did not give the defendant credit for the time he had spent in pretrial incarceration awaiting the armed robbery trial.

On appeal, the defendant contends the following: (1) his motion to dismiss should have been allowed because he was unfairly prejudiced by the procedures followed by the probation department in handling his case, and this mishandling deprived him of liberty without due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution as well as art. 12 of the Massachusetts Declaration of Rights; (2) he is entitled to dismissal of the probation surrender proceeding because the representation at the probation surrender hearing of the probation department, a division of the judicial branch, by the Middlesex district attorney's office, a division of the executive branch, violated separation of powers principles guaranteed by art. 30 of the Massachusetts Declaration of Rights; and (3) the provisions of G. L. c. 279, § 33A, and G. L. c. 127, § 129B, require that he receive credit against the sentence imposed as a result of the September, 1995, probation violation, for the amount of time he spent incarcerated awaiting

---

[3]After the hearing the defendant was committed to Bridgewater State Hospital, pursuant to G. L. c. 123, § 35.

the armed robbery trial, which, because of his acquittal on that charge, constituted "dead time."[4]

(1) The defendant first contends that his motion to dismiss the probation surrender proceeding should have been allowed because he was unfairly prejudiced by the probation department's conduct in handling his case. He claims that the department's withdrawal of its surrender notice without holding a hearing following such a lengthy period of incarceration, and its subsequent filing of a second probation surrender against him after he was arrested on a misdemeanor charge, left him in a situation where he "was set free to face another year in jail." In addition, he claims that this mishandling deprived him of liberty without due process of law, in violation of the Fifth and Fourteenth Amendments as well as art. 12 of the Massachusetts Declaration of Rights.

The probation department may commence a probation surrender hearing immediately after an indictment is returned against a defendant who is on probation. See *Commonwealth* v. *Odoardi*, 397 Mass. 28, 35 (1986); *Rubera* v. *Commonwealth*, 371 Mass. 177, 181 (1976). However, it may choose to postpone the surrender proceedings until disposition at the trial of the new criminal charge. *Odoardi, supra*; *Rubera, supra*. In *Odoardi, supra* at 35-36, the defendant's probation was revoked twenty-two months after he was indicted on a new charge, and six months after his probation expired. We concluded that there was no lack of diligence by the Commonwealth or prejudice to the defendant shown. Similarly, the probation department's postponement of the probation surrender hearing in this case was proper, and did not prejudice the defendant. See *Odoardi, supra* at 35-36; *Rubera, supra* at 181.

After the defendant was acquitted of the unarmed robbery charge, it was within the discretion of the probation department to withdraw its notice of surrender without proceeding with a hearing. While it is unfortunate that the defendant served more time awaiting trial for a crime of which he was acquitted than he would have served had he simply served the sentences imposed for the November, 1993, convictions, we cannot say that the probation department's conduct was improper.

---

[4]The term "dead time" refers to time spent in confinement for which no day-to-day credit is given against any sentence. See *Lynch, petitioner*, 379 Mass. 757, 759 n.1 (1980); *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 390 (1977).

The fact that the probation department provided the defendant with a second notice of surrender when he committed another crime within the period of probation cannot be considered improper. Although the September, 1995, crime was a misdemeanor, it nevertheless was a violation of the conditions of his November, 1993, probation.

Finally, the department's withdrawal of the surrender notice did not deprive the defendant of the opportunity to be heard with regard to the alleged probation violation, because upon withdrawing the notice, the defendant was no longer being accused of violating his probation. Although the revocation of probation does implicate due process rights under the Federal Constitution, see *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), as well as under art. 12, see *Commonwealth* v. *Durling*, 407 Mass. 108 (1990), in this case the defendant did not have his probation revoked under the first notice, because the surrender hearing had been continued at the defendant's request. Instead, the defendant was incarcerated because he did not post bail which had been set for the robbery charge. Therefore, the defendant's claim, that his right to due process under the Federal and State Constitutions was violated by the probation department's withdrawal of its surrender notice, is without merit.

(2) The defendant next argues that his motion to dismiss should have been allowed because representation at the probation surrender hearing of the probation department, a division of the judicial branch, by the Middlesex district attorney's office, a division of the executive branch, violated separation of powers principles embodied in art. 30 of the Massachusetts Declaration of Rights. In *Commonwealth* v. *Tate*, 34 Mass. App. Ct. 446, 447-448 (1993), an assistant district attorney participated at the defendant's surrender hearing by examining and cross-examining witnesses. Recognizing that probation functions fall within the judicial branch, *Massachusetts Probation Ass'n* v. *Commissioner of Admin.*, 370 Mass. 651, 657 (1976), and that the office of the district attorney is within the executive branch, *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 721 (1980), the Appeals Court held that the voluntary coordination of activity between various branches of government does not violate art. 30 as long as the activities do not intrude into the internal functioning of either branch. *Tate, supra* at 448.

The defendant argues that the assistant district attorney's participation at his surrender hearing was not voluntary because

the judge in effect compelled the probation department to utilize the district attorney's office for the purpose of responding to the defendant's legal arguments. Apparently the judge suggested during the initial hearing on the defendant's motion that the probation department obtain counsel, despite the probation officer's willingness to go forward. We do not agree with the defendant's contention that this suggestion "took the decision to retain counsel away from the Probation Department, thereby making the coordinated activity 'involuntary.' "

The defendant next claims that the degree of participation by the assistant district attorney was such that it interfered with the internal functioning of the probation department. The district attorney may provide legal representation to the probation department at such hearings without interfering with the internal functioning of the probation department. Here, the assistant district attorney briefly addressed the court with respect to the defendant's motion to dismiss and alternative request for jail credit. Once the defendant's motion to dismiss was denied, the probation officer conducted the entire probation surrender portion of the hearing on behalf of the probation department. Thus, the assistant district attorney's participation in this hearing was merely to provide legal assistance and was even less intrusive than in *Tate*, where the assistant district attorney examined and cross-examined witnesses. *Tate, supra* at 448. The assistant district attorney's participation in the hearing did not interfere with, but rather aided, the probation officer in arguing the substantial issues of law. Therefore, the appearance of the assistant district attorney at the defendant's probation surrender hearing did not violate art. 30.

(3) The defendant next contends that he should have received credit against his sentence on the revoked probation for the amount of time he served while awaiting trial for the prior, unrelated armed robbery charge, pursuant to G. L. c. 127, § 129B, and G. L. c. 279, § 33A. He claims that, because he was acquitted of the robbery charge, the 410 days he spent awaiting trial was essentially "dead time" for which he is entitled credit. Furthermore, he argues that not being allowed credit for this "dead time" against the sentence on the probation surrender would be unfair, because his liberty was lost for almost fourteen months, time which he will never be able to regain, as the result of the acquittal.

Criminal defendants have a right to have their sentences

reduced by the amount of time they spend in custody awaiting trial, unless in imposing the sentence, the judge has already deducted such time or taken it into consideration in determining the sentence. See G. L. c. 127, § 129B; G. L. c. 279, § 33A.[5] However, time spent in custody awaiting trial for one crime generally may not be credited against a sentence for an unrelated crime. See *Libby* v. *Commissioner of Correction*, 353 Mass. 472, 475 (1968); *Needel, petitioner*, 344 Mass. 260, 262 (1962); *Commonwealth* v. *Carter*, 10 Mass. App. Ct. 618, 620 n.4 (1980). The purpose of this rule is to prevent criminals from essentially having "a line of credit for future crimes." *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 395 (1977), quoting Sills v. Peyton, Mem. Dec. 12,045 (4th Cir. 1968). See *Miller* v. *Cox*, 443 F.2d 1019, 1021 (4th Cir. 1971).

In some circumstances, a defendant may be allowed to credit time in an unrelated case if necessary to prevent a defendant from serving "dead time." See *Manning, supra* at 396; *Commonwealth* v. *Foley*, 17 Mass. App. Ct. 238, 243 (1983). See also *Commonwealth* v. *Grant*, 366 Mass. 272, 276 (1974). In *Manning, supra*, we allowed the defendant to credit time served on a first sentence, which had been vacated on appeal, against a second sentence which he was supposed to serve consecutively, because it was necessary to remedy the injustice of his serving time for which he otherwise would receive no credit. However, the statutes do not permit defendants to "bank time" against future offenses. In *Manning*, for example, it was important to the holding that the defendant was convicted of the second crime prior to being discharged on the first. See *id.* at 392-394 (defendant may not receive credit for confinement against sentence imposed for crime committed after period of confine-

---

[5]General Laws c. 127, § 129B, states: "The sentence of any prisoner in any correctional institution of the commonwealth or in any house of correction or jail, who was held in custody awaiting trial shall be reduced by the number of days spent by him in confinement prior to such sentence and while awaiting trial, unless the court in imposing such sentence had already deducted therefrom the time during which such prisoner had been confined while awaiting trial."

General Laws c. 279, § 33A, states: "The court on imposing a sentence of commitment to a correctional institution of the commonwealth, a house of correction, or a jail, shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial."

ment). "An allowance for prison time previously served under a void commitment does not reduce sentences imposed as a result of new and different crimes." *Id.* at 395 n.9, quoting *Davis* v. *Attorney Gen.*, 432 F.2d 777, 778 (5th Cir. 1970).

Here, unlike in *Manning*, the defendant was discharged approximately six months prior to being convicted on the second crime. Although the time he served awaiting trial on the robbery charge constitutes "dead time," the need to prevent criminal defendants from "banking time" for use against future sentences outweighs any fairness issues normally applicable in such situations. To allow prisoners to "bank time" in such a manner would be a matter of great concern, because it could in effect grant prisoners a license to commit future criminal acts with immunity. *Manning, supra* at 395. Therefore, the defendant is not entitled to receive credit for time he served awaiting trial on the robbery charge, to reduce the sentence imposed as the result of a crime he committed six months after his acquittal and discharge on the robbery charge.[6]

Because we have affirmed the denial of the defendant's motion to dismiss and have concluded that he is not entitled to credit on his sentence, we need not address whether the stay of execution was properly denied by the single justice of the Appeals Court. See note 1, *supra*.

*Order affirmed.*

---

[6]Considering the important value of liberty, this result may seem harsh in this particular case. However, the defendant had a number of options which he failed to pursue. He could have posted the $500 bond or obtained a $5,000 surety. If he was unable to meet the bail requirements, he could have requested a bail hearing. He also could have requested that the surrender hearing go forward while the armed robbery charge was pending so that he would obtain credit for time served against the suspended sentence from November, 1993. The defendant chose not to pursue these options.